HUXLEY-WESTFRIED CORPORATION, Respondent, *v.* PHILIPP BROTHERS ORE CORPORATION, Appellant.

First Department, May 11, 1965.

*Leo T. Kissam* of counsel (*Anthony S. Genovese* with him on the brief; *Kissam & Halpin,* attorneys), for appellant.

*Matthew H. Ross* of counsel (*Frederick Newman* with him on the brief; *Blumberg, Singer, Ross & Gordon,* attorneys), for respondent.

*Per Curiam.* The complaint sets out three causes of action. Special Term on the application of defendant granted summary judgment dismissing the third cause of action and denied defendant's similar application as to the first two causes of action. The appeal is from this latter ruling.

It appears that both parties had engaged in barter transactions with the Turkish government pursuant to an agreement between the United States and Turkey dated April 28, 1955, which agreement was made in accordance with statute (U. S. Code, tit. 7, § 1692). A barter transaction proceeded, in general terms, as follows: The respective governments would agree on

the commodities which were to be the subjects of the barter and also on the prices at which the exchange was to be made. In this case these commodities were American wool and Turkish chrome. A private party would arrange for the purchase of the wool from the Commodities Credit Corporation (CCC) at a fixed price, and for its delivery to Turkey. He would then bargain for the exchange of this commodity for chrome in Turkey with Sumerbank, an agency of the Turkish government. In the event that the value of the wool exceeded the value of the chrome held by Sumerbank as reflected in the fixed prices, he was free to make up the difference by purchase of Turkish chrome from private individuals in Turkey at whatever price he could bargain for. He then delivered the chrome to CCC, which in turn gave him its value in other commodities held by CCC, which commodities he disposed of as he chose. Prior to the events recited in the complaint, each party to this suit had completed several such transactions, each party acting quite independently of the other.

In late 1956 and early 1957 each of these parties was simultaneously but separately negotiating for such agreements. On May 17, 1957, Sumerbank had a meeting with the representatives of each of the parties and all three signed a document, styled a "Protocol", by which it was signified that Sumerbank would exchange chrome for wool with the two concerns, each of the latter supplying $4,000,000 worth of wool, for a total of $8,000,000. Any contract would be subject to the wool and the chrome being available, and further subject to the ratification of the respective governments and the CCC.

On the same day defendant made a preliminary agreement with CCC by which it was permitted to reserve wool from CCC's stockpile to an amount sufficient to meet its commitment to Sumerbank.

Five days later plaintiff made contracts with Sumerbank to sell $4,000,000 worth of wool, and with Etibank (another agency of the Turkish government) to purchase chrome. These contracts were made on behalf of plaintiff alone and make no reference to defendant. Later, on June 12 and September 4, 1957, defendant made similar contracts with the Turkish agencies. Those contracts were likewise made on defendant's behalf alone and make no reference to plaintiff.

It is alleged in the complaint that defendant's reservation of wool exhausted the supply of wool held by CCC and plaintiff was unable to procure any. Plaintiff's first cause of action is based on the contention that the Protocol evidenced a joint venture by which plaintiff and defendant entered a barter agree-

ment with Sumerbank. Neither the complaint nor the bill of particulars points to any other agreement, written or oral, which is relied on to constitute the joint venture. It is clear that the Protocol contains no engagements between the parties to this action. The ordinary meaning of the words used in it shows no joint undertaking but rather a separate undertaking by each.* The affidavits clearly show that this was also the understanding of Sumerbank. As plaintiff's conduct shows, it expected that each party would make its own separate arrangements with the Turkish agencies and each one did.

Special Term denied the motion as to the first cause of action on the ground that the Protocol was ambiguous as to the existence of a joint venture. In certain situations this would be a significant finding. If a joint venture was entered into it would not be necessary to allege or prove that all the terms were crystallized in order to enforce certain duties arising from the relationship alone. Such would be a duty of good faith to the other member of the joint venture. But here the claim as pleaded is that the defendant failed to perform and damages are sought on the basis of the profits that would be realized from the undertaking. To recover on this basis the terms of the joint venture must be established, including the duties and shares of each of the venturers. It is quite clear that there never was any such agreement, and whether the document relied on is clear or ambiguous this cause of action cannot be the basis of recovery.

The second cause of action alleges that defendant represented that it would share whatever wool could be obtained from CCC with plaintiff and, relying thereon, plaintiff ceased independent efforts to obtain wool. Plaintiff's affidavits show that the representation complained of was made at the meeting at which the Protocol was executed and immediately before it was drawn up. But plaintiff's agent says that immediately upon the execution he became suspicious that defendant did not intend to share the wool and advised his principals in New York, cautioning them to take steps to procure a supply from the CCC. The advice, consisting of a cable, was before the court and it does not refer to any joint agreement or representation. It does advise: " Since agreement subject availability and competitor has already preselected contact immediately CCC that we should

---

* The significant portion of the Protocol reads:

" A final agreement has been reached with the two above firms and Sumerbank for the exchange of Chrome and Wool on the following basis:

" A. Each of the above two firms will supply wool from the Stockpile held by CCC for an amount of approximately $4,000,000 totaling $8,000,000."

not be at disadvantage.'' The agreement referred to is the Protocol and the competitor is defendant. Since plaintiff was advised of the necessity of procuring its own wool before it was advised of any representation, a claim that it was prevented from pursuing its endeavors to procure wool by the representation is patently without foundation.

The order denying summary judgment should be reversed on the law and summary judgment dismissing the complaint granted, with costs to defendant.

RABIN, J. P. (dissenting). I dissent and vote to affirm the order appealed from. I cannot see how summary judgment can properly be granted to the defendant as is here being done.

The ultimate determination of this action will depend upon the construction of the '' Protocol '' or written agreement signed by the parties. I agree with Special Term that '' a fair reading of the written agreement favors plaintiff's construction thereof.''

If the plaintiff were seeking to recover on the basis of a joint venture, I too would hold that no such joint venture has been shown to exist. However, plaintiff does not rely upon a joint venture. Reliance is placed upon an agreement entered into for a valuable consideration '' to participate on an equal basis in the purchase of certain wool from The Commodity Credit Corporation * * * and in the sale thereof.'' It is for the breach of such an agreement, and not the breach of a joint venture agreement that the plaintiff seeks recovery. And the '' Protocol '' itself supports the possibility that such an agreement was made. The '' Protocol '' provides that '' [e]ach of the [parties] will supply wool from the Stockpile held by CCC for an amount of approximately $4,000,000 totaling $8,000,000.'' It further provides that '' This is subject to the wool being available in grades, quality and similar condition * * * Should the conditions and availability be changed, the contractors *will* * * * *renegotiate* the terms and conditions of these qualities of wool *on similar basis.*'' (Emphasis supplied.)

In the light of this language the '' Protocol '' would appear to be susceptible of a construction that were there to be less than $8,000,000 worth of wool available in the CCC stockpile, the parties would — on a '' similar basis '' to the original arrangement — share the available wool equally. I do not conclude — as I need not at this point — that there was in fact an agreement to share the available wool equally. However, I do conclude that the '' Protocol '' points strongly to the existence of such an agreement, and if such an agreement should be found, the plaintiff might very well be entitled to a recovery. In any

event, it may not be said that there is no triable issue presented. Accordingly, I vote to affirm.

VALENTE, MCNALLY, STEVENS and STEUER, JJ., concur in *Per Curiam* opinion; RABIN, J. P., dissents in opinion.

Order, entered on November 13, 1964, denying summary judgment reversed, on the law, with $30 costs and disbursements to the appellant, and summary judgment dismissing the complaint granted.